| 43   547 |
| 122a 663 |

THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent, *v.* DANIEL D. WYLIE, Appellant.

*Estoppel — when one entering into a contract with a corporation cannot assail it as being ultra vires — what evidence shows an agreement of an assignee of a lease to pay rent.*

This action was brought against the defendant, as the assignee of a lease of a pier in the East river given by the plaintiff to one Darrow, in 1865, for the term of ten years, to recover rent falling due in 1875. In 1868 the defendant took an assignment of the lease, with the consent of the comptroller of the city, and entered into possession.

*Held,* that even if it were conceded that the city, when making the lease, did not comply with all the statutory requirements, yet as the act of making the lease was not prohibited by statute, and as the defendant had enjoyed all the benefits of the lease, he was prohibited from raising the defense of irregularity

The defendant claimed that there was no privity of contract between the plaintiff and himself created by the assignment of the lease, as the right of collecting wharfage conferred by it was simply an incorporeal hereditament.

*Held,* that it was not necessary to determine this question, as an express contract to pay the rent could be deduced from the evidence showing that the defendant, on receiving an assignment of the lease, gave security for the payment of the rent, and that he had in fact paid the same for several years.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

On the 25th of April, 1865, the plaintiffs made a lease for the term of ten years, from May 1, 1865, to one Daniel Darrow, of Pier No. 7, East River, at an annual rent of $5,000, payable quarterly. In October, 1868, the defendant took an assignment of the lease, with the consent of the comptroller of the city, and entered into possession. This action was brought to recover $1,250, rent due February 1, 1875, and $1,250 rent due May 1, 1875.

The defendant testified that there was an understanding with the comptroller, at the time of the assignment, that he should have the pier for $3,000 a year, and that he paid at that rate until August 1, 1870, when rent at the rate of $5,000 a year was paid down to and including November 1, 1874. The receipts given during the time rent was paid by the defendant at the rate of $3,000 a year, were for the full amount of rent, viz , $5,000 a year, and were followed by a memorandum stating that an allowance had been made by the comptroller, so that the rent actually paid was only $3,000 a year. The defendant claims to have paid the full rent under protest, and the receipts contained a memorandum that the protest was on account of a claim for allowance in consequence of the condition of the pier.

The plaintiff offered in evidence a bond whereby, for and in consideration of the transfer of the lease in question to the defendant, the obligors in the bond became sureties for the punctual payment of the rent and the performance of the covenants in the agreement mentioned. A motion to dismiss the complaint was

made upon the ground that no valid lease or consent to the assign-
ment had been shown, that the assignment established no privity
of contract between plaintiff and defendant, which was denied, and
an exception taken. The case was then submitted to the jury
under the charge of the court, to the effect that if the jury believed
that the comptroller, at the time of the assignment of the lease,
made an agreement that the rent should be reduced from $5,000 to
$3,000, the defendant was entitled to a verdict. The jury returned
a verdict for the plaintiff, and from the judgment thereupon
entered and from an order denying a motion for a new trial, this
appeal is taken.

*William C. Trull*, for the appellant.

*John J. Townsend, Jr.*, for the respondent

Van Brunt, P. J.:

The grounds upon which the appellant seeks a reversal herein
seem to be as follows: 1. That no valid lease was proven from
the plaintiffs to Darrow, and that it was error to refuse to allow the
defendant to prove that the advertisements required by law were
not made prior to the execution of the lease to Darrow. 2. That
the defendant did not go into possession of the pier under the lease
to Darrow, or as assignee of that lease. 3. That even if the
defendant had, as assignee of Darrow, entered into possession of
the premises, still the assignment from Darrow to the defendant
created no privity of contract between the defendant and plaintiff,
and 4. That the verdict was against the evidence, the defend-
nt's testimony as to the agreement with the comptroller being
uncontradicted.

The defendant concedes that if the lease was simply *ultra vires*,
the same having become an executed contract, the fact that it was
*ultra vires* would be no defense, but claims, however, that although
the lease was not *ultra vires* the plaintiff, yet, because all the
requirements of the statute in respect to the manner of execution
of leases were not complied with, the lease was void and illegal,
and no recovery could be had thereon, even though the other party
may have received all the benefits therefrom. In other words, if
the corporation, having no power at all to make the lease, had

made one in form, a recovery could be had thereon when it became an executed contract, but having the power, no recovery can be had because a strict compliance with the procedure provided by statute has not been shown, even though the contract has become an executed contract. If this contention is true, then the greater the violation of the law in the attempted making of a contract, the greater the power to enforce. The authorities cited do not sustain this proposition.

In the cases of the *New York Trust and Loan Company* v. *Helmer* (12 Hun, 35); *Pratt* v. *Eaton* (18 id., 293); *Madison Avenue Baptist Church* v. *Oliver Street Baptist Church* (73 N.Y. 82), the decisions were based upon the fact that the transactions forming the basis of the actions were expressly forbidden by the laws of the State. The court says in the latter case that " corpora-tions may incur responsibilities by acts which are *ultra vires;* but contracts which they are prohibited from making, whether executory or executed, cannot be held valid. They may sometimes be estopped from asserting the invalidity of such contracts, and thus be practically bound by them. But that is not because the contracts are valid, but because it would be a fraud upon the other party to assert their invalidity."

There is thus made a broad distinction between a contract which is prohibited and one which is *ultra vires*, or merely irregular because the preliminary statutory regulations have not been complied with, and one expressly prohibited by statute. It may be true that all the statutory requirements may not have been complied with in the making of the lease at bar, yet the act of making the lease not being prohibited by statute, and the defendant having enjoyed all the benefits of the lease, he is now prohibited from raising the defense of irregularity under the rule established by the cases cited by the defendant. The claim that the defendant did not go into possession of the pier under the lease to Darrow, or as assignee of that lease, is disposed of by the pleadings and the verdict of the jury. The pleadings admit that the defendant went into the possession of the pier, and the verdict of the jury was that there was no agreement made by the comptroller at the time of the assignment, that the rent should be reduced from $5,000 to $3,000, and this verdict was not against the evidence in the case. It is

true that there was no oral testimony contradicting the story of the defendant, but the documentary evidence seems to be incon sistent with the existence of such an agreement.   The bond of the sureties executed upon behalf of the defendant, the receipts given after the alleged agreement, all for the full rent, containing, how· ever, an allowance by the comptroller, and last, but not least, the ground upon which the protest was based at the time full rent was demanded, such ground being, not that the city had agreed to take less, but that less should be paid because of the condition of the pier.   These circumstances fully justified the jury in coming to the conclusion that the defendant was mistaken in supposing that any agreement reducing the rent was entered into between the defendant and the comptroller.

It is, however, claimed that there was no privity of contract between the defendant and the plaintiff arising out of the assign· ment of the lease by Darrow to the defendant, the right to collect wharfage being simply an incorporeal hereditament.   It is not necessary to determine this question in this case, because an express contract can be deduced from the evidence.   That the defendant agreed to pay the rent is evidenced by the fact of his having given security to do so and by the fact that he has paid such rent for years, and this evidence is more than sufficient to establish *prima facie* a contract between the defendant and the plaintiff.   Such contract being established it is entirely immaterial whether or not the assignment created any privity of contract. It is true that some of the evidence was not introduced until after a motion to dismiss upon this ground had been made and denied, but the rule is well established that even if a ground of dismissal is well taken at the time the motion is made and denied, yet if subsequent evidence removes such ground, the exception taken is not available.

Upon the whole case, therefore, it does not appear that any error has been committed, and the judgment must be affirmed with costs.

DANIELS and BARTLETT, JJ., concurred.

Judgment affirmed with costs.